**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD KUJAWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 3551 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Richard Kujawski, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1382c(a)(3)(A). Mr. Kujawski asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

**PROCEDURAL HISTORY**

Mr. Kujawski applied for SSI and DIB on February 26, 2007, alleging that he had become disabled on July 11, 2006, due to depression, diabetes, fatigue, left foot problems, and insomnia. (Administrative Record ("R.") 133-35, 204). His application was denied initially and upon reconsideration. (R. 61-63, 76-78). Mr. Kujawski continued pursuit of his claim by filing a timely request for a hearing. (R. 79-81).

An administrative law judge ("ALJ") convened a hearing on March 24, 2010, at which Mr.

Kujawski, represented by counsel, appeared and testified. (R. 27-60). In addition, Thomas Gusloff testified as a vocational expert. (R. 27). On July 19, 2010, the ALJ issued a decision finding that Mr. Kujawski was not entitled to benefits because he would be able to perform a limited range of light work if he ceased substance abuse. (R. 7-26). This became the final decision of the Commissioner when the Appeals Council denied Mr. Kujawski's request for review of the decision on January 13, 2012. (R. 1-4). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Kujawski has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.

## EVIDENCE

### A.

Mr. Kujawski was born on April 11, 1957, making him fifty-three years old at the time of the ALJ's decision. (R. 199). He has a college education. (R. 209). His work history is sporadic. He has had several jobs, ranging from limousine driver to supervisor at a maintenance company, most of which lasted no more than several months. (R. 205). He explains that he gets fried a lot because he is sleepy all the time. (R. 204).

### B.

The medical evidence reveals that Mr. Kujawski is an alcoholic of long-standing. For about thirty years, he has been drinking a pint of whisky a day. (R. 406). Both he and the ALJ seem to think the record shows that he has ceased his drinking – Mr. Kujawski says December 2006, the ALJ says March 2007 – but the evidence suggests otherwise. He has been hospitalized for drinking on at least one occasion, in 2006. (R. 369). He has been treated for bipolar disorder and depression,

and takes Seroquel, Depakote, and Ambien. (R. 486, 493). He has considered, and claims to have attempted, suicide. (R. 405). From a physical standpoint, Mr. Kujawski also suffers from diabetes, and at the time he was hospitalized due to his alcoholism, he was in diabetic ketoacidosis. (R. 368-69).

Mr. Kujawski's treating physician, Dr. Stec, believes he is disabled as a result of his depression and diabetes. He reported in March 2007, that Mr. Kujawski suffers from diabetic peripheral neuropathy – which, along with osteoarthritis, adversely affects his physical capabilities – and hypoglycemic encephalopathy – which, along with his depression, adversely affects his memory and concentration. (R. 364-65).

A psychiatrist who treated Mr. Kujawski while he was living in New Jersey in December 2007, opined that he was disabled from December 2007 to "Dec 09?" (R. 423) due to bipolar disorder. (R. 425). Oddly, the doctor was completely unaware of Mr. Kujawski's substance abuse. (R. 425). A physician who treated Mr. Kujawski during his stay in New Jersey felt he was disabled for about three months at the end of 2007, but that after that he was medically cleared for employment. (R. 415, 416).

A consulting psychiatrist, who examined Mr. Kujawski in March 2007 in connection with his application for benefits, found him to suffer from bipolar disorder, obsessive compulsive disorder, and personality disorder. (R. 408). His immediate, recent, and remote memory were all somewhat impaired. He did not know how many weeks were in a year or how many nickels were in a dollar. (R. 408). The consulting psychiatrist assigned Mr. Kujawski a global assessment functioning score of 30 (R. 409), indicating that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (*e.g.*, sometimes

3

incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (*e.g.*, stays in bed all day, no job, home, or friends)." www.gafscore.com.

Dr. Pittman reviewed Mr. Kujawski's medica records on behalf of the state disability agency in April 2007. (R. 385). He felt that Mr. Kujawski's substance abuse disorder met the listings of impairments. It left him moderately limited in daily activities, markedly limited in social functioning and concentration, persistence, or pace, and resulted in one or two extended periods of decompensation. (R. 395). His primary illness was alcoholism, which affected his mood and behavior. His substance abuse disorder was material. (R. 397). Dr. Kravitz conducted another review of the record in April 2009 and parroted Dr. Pittman's conclusions. (R. 433).

## C.

At his administrative hearing, Mr. Kujawski testified that he was living in a studio apartment. Until recently, his local township had been subsidizing his living arrangements, but now he was relying on money from friends. (R. 34-35). He said he last tried to work in 2006 or 2007, but couldn't concentrate, and was fired because of it. (R. 35-36). Lack of concentration and loss of memory were his major problems, but he also got angry and was slow. (R. 37). His hands got numb. (R. 49). He could stand for ten minutes before getting numb. (R. 49).

Mr. Kujawski testified that three years ago [2007], he had been drinking on a daily basis. (R. 38). The last time he drank was three months before the hearing (R. 38), or December 2009. Before that, he didn't have a drink for a year. (R. 38). He became somewhat agitated when asked about his attendance at AA meetings. (R. 38-39). He went to what he called open meetings, where he could discuss any subject, once a week. (R. 39-40).

Mr. Kujawski said his medication was not improving his concentration or memory very

much. (R. 41). He was unable to concentrate on reading. (R. 42). He said, aside from meetings, he didn't interact with people. (R. 43). He didn't go to restaurants or movies. (R. 46-47). He went to church once a week. (R. 47). Despite taking medication, he didn't sleep well. (R. 44). He didn't dress every day and showered just twice a week. (R. 44). He didn't cook; he made sandwiches and sometimes heated up cups of noodles. (R. 45). He took out the garbage, but his girlfriend helped him take care of his apartment and brought him food. (R. 46).

### D.

The vocational expert, Mr. Gusloff, then testified. The ALJ asked him whether there would be any jobs amenable to an individual who could perform light work, except with no climbing of ladders, ropes, or scaffolds, and only occasional climbing of stairs and ramps, balancing, stooping crouching, kneeling, and crawling; and who was also limited to simple, routine, repetitive tasks, and only minimal interaction with supervisors, co-workers, and the general public. (R. 55). Mr. Gusloff said that such a person could be a cleaner/housekeeper, and there were 21,350 such jobs in the regional economy. (R. 56). There were also 5000 stock clerk-marker jobs in the area that such a person could perform and 2500 laundry worker jobs. (R. 56).

Mr. Kujawski's attorney asked whether a person who was off task a third of the time could perform any work. The answer, predictably, was "no." (R. ). Counsel also asked if he could have 14 days in which to submit additional psychiatric evidence, and the ALJ indicated she would leave the record open that long before making her decision. (R. 30-31, 59-60).

### III.

### The ALJ's Decision

The ALJ found that Mr. Kujawski suffered from the following severe impairments: depression, diabetes mellitus, hypertension, bipolar disorder, and history of substance abuse. (R. 13). The ALJ next determined that his impairments, including his substance abuse disorder, met listing 12.04– covering affective disorders – and 12.09 – covering substance abuse disorders. (R. 13). Mr. Kujawski's activities of daily living were markedly restricted, as was his social functioning and his concentration, persistence, and pace. (R. 13). He also has had one or two episodes of decompensation. (R. 14).

The ALJ then concluded that, after his March 2007 examination – at which time he was drinking a pint of whiskey a day (R. 13) – Mr. Kujawski stopped abusing alcohol. (R. 14). Thereafter he did not meet the listings; he was generally alert, oriented times three, dressed appropriately, and a little restless. (R. 14). The ALJ gave great weight to the opinion of Dr. Kravitz – who reviewed the medical evidence but did not examine Mr. Kujawski – that alcoholism was Mr. Kujawski's primary impairment. (R. 14). The ALJ then found that, if Mr. Kujawski stopped the substance abuse, he would still have a severe impairment, but he would not meet the listings. (R. 14). Since he stopped abusing alcohol, he had only mild restrictions in his daily activities, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. (R. 15).

The ALJ next concluded that, if Mr. Kujawski stopped his substance abuse, he would have the residual functional capacity ("RFC") to perform light work, except with no climbing of ladders, ropes, or scaffolds, and only occasional climbing of stairs and ramps, balancing, stooping, crouching, Kneeling, and crawling. (R. 15). He was also limited to simple, routine, repetitive tasks, and only minimal interaction with supervisors, co-workers, and the general public. (R. 15-16). The ALJ

summarized the medical evidence. She noted that Mr. Kujawski was hospitalized for alcohol abuse for over two weeks in the winter of 2006-07. He was treated for foot pain in January 2007. His treating physician, Dr. Stec, reported that he was totally disabled due to depression and diabetic neuropathy. (R. 17).

A consultative psychiatric examination in March 2008 resulted in a global assessment of functioning score of just 30. (R. 18). From December 2007 through March 2008, Mr. Kujawski was treated on several occasions for diabetes, with his A1c levels dictating repeated adjustments to his medication. (R. 18). Records from Stroger Hospital in 2009 included treatment for bipolar disorder, including prescriptions for Depakote, Seroquil, and Effexor. (R. 18). The ALJ went on to note that Mr. Kujawski engaged in a wide variety of daily activities, including taking care of his small apartment with his girlfriend's help, making sandwiches, grocery shopping, and taking out the garbage. He also attended church and AA meetings weekly. (R. 19). The ALJ noted that Mr. Kujawski's GAF score was 30 in March 2007, but that he was drinking at the time. She added that even when drinking, he could recall 4 digits forward, 3 digits in reverse, 3 of 3 objects after one minute and 2 of 3 after five minutes. (R. 19). She said that, since he has been sober, his treatment for mental illness was mostly just refilling medications. (R. 20).

The ALJ gave little weight to Dr. Stec's opinion. She said there was no evidence of diabetic neuropathy and the doctor made no mention of alcohol abuse; he had not evaluated the impact of Mr. Kujawski's alcohol abuse on his mental impairment. (R. 20). She further noted that one of Mr. Kujawski's treating physicians found him disabled for a period of no more than three months, and thereafter able to work. (R. 20). A second physician opined he was disabled from 2007 through December 2009, but had not seen him since December 2007. (R. 20). The ALJ gave the opinion

7

little weight. (R. 20).

Finally, the ALJ summarized the vocational expert's testimony that a person with Mr. Kujawski's limitations – "if he stopped the substance abuse" – could still perform a number of jobs – like cleaner/housekeepr, retail marker, or folding machine operator – that existed in significant numbers in the regional economy. (R. 22). The ALJ accepted this testimony, and relied upon it to find Mr. Kujawski not disabled and not entitled to SSI under the Act. (R. 22).

## IV.
## DISCUSSION

### A.
### The Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for

the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Kujawski v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

## B.

## The Five-Step Sequential Analysis

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

   1) is the plaintiff currently unemployed;

   2) does the plaintiff have a severe impairment;

   3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

   4) is the plaintiff unable to perform his past relevant work; and

   5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920;

*Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

In a case like this one, where the claimant has a history of substance abuse, the issue for the administrative law judge is whether, were the claimant not a substance abuser, he would still be disabled. 20 C.F.R. § 404.1535(b)(1); *Kangail v. Barnhart*, 454 F.3d 627, 628-29 (7th Cir. 2006).

## C.

### Analysis

Mr. Kujawski has first, he contends that the ALJ's determination that his substance abuse was a material factor in his disability was unsupported by substantial evidence. He explains that, because there is no dispute that he is disabled, and because he has not abused alcohol since December 2006, the ALJ's decision was simply wrong. Despite the fact he has not used alcohol in several years, he remains disabled, he argues, and should be entitled to benefits. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered pp. 14-15).

Mr. Kujawski also argues that the ALJ failed to properly consider reports from treating doctors and psychiatrists. He complains that the ALJ's reliance on the reviewing doctors' reports was misplaced because they failed to consider records that show he stopped drinking in after his hospitalization in December 2006-January 2007. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered page 18). He also argues that the ALJ should not have discounted treating doctors' opinions due to their failure to consider Mr. Kujawski's alcoholism. He claims, again, that the

record demonstrates he had stopped drinking at that point. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered page 18-19). Finally, Mr. Kujawski takes the ALJ to task for failing to even mention the report of Dr. E. Tylicen from November 1, 2010. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered page 19).

**1.**

In the main, Mr. Kujawski's arguments are unavailing. Indeed, his argument about the report from Dr. Tylicen is preposterous. The report, from November 2010, was submitted on November 19, 2010 (R. 519), *four months after the ALJ's decision issued, and three-and-a-half months after it was due.* (R. 22). The logical bridge requirement is sometimes a mandate sometimes requiring unpredictable results, but not even it demands that an ALJ discuss evidence not submitted to her. Moreover, Mr. Kujawski's attorney asked for, and was given, ample additional time to submit medical evidence. Dr. Tylicen began treating Mr. Kujawski in April 2009 – although there are no notes from such treatment. There was no excuse for not submitting this report in a timely fashion.

In any event, we are not at liberty to consider the report since it was not before the ALJ. *McFadden v. Astrue*, 465 Fed.Appx. 557, 559-60 (7th Cir. 2012); *Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004); *Eads v. Sec'y of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993). While Mr. Kujawski is correct that it was technically a part of the administrative record (*Plaintiff's Reply Brief*, at unnumbered page 2), it was submitted, not to the ALJ, but to the Appeals Council. (R. 519; R. 10 at 366–438). The Appeals Council denied Mr. Kujawski's request for review, and the report cannot now be used as a basis for a finding of reversible error. *Rice*, 384 F.3d at 366 n.2.

Significantly, Mr. Kujawski does not ask that the case be remanded under sentence six for consideration of new and material evidence, *see* 42 U.S.C. § 405(g); *Gossett v. Colvin*, – F.3d –, –,

2013 WL 2993545, 4 (7th Cir. 2013); *Schmidt v. Barnhart,* 395 F.3d 737, 741–42 (7th Cir.2005), so any such argument is deemed waived. *Richison v. Astrue*, 462 Fed.Appx. 622, 626 (7th Cir. 2012); *Schoenfeld v. Apfel,* 237 F.3d 788, 793 (7th Cir.2001); *Ehrhart v. Sec'y of HHS,* 969 F.2d 534, 537 n.4 (7th Cir.1992). Moreover, because Dr. Tylicen was treating Mr. Kujawski for a year and a half prior to the date of the report and for more than a year prior to the date of the ALJ's decision, the evidence is not "new," and there is no good cause for having failed to submit it earlier. *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003)("Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence."). And, because the report is not based on any treatment notes, it would not be considered material because there is not "a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). The report is conclusory and unsupported by any treatment notes or testing results, meaning that the ALJ would have been free to reject it. *See Schmidt v. Astrue*, 496 F.3d 833, 842-43 (7th Cir. 2007).

**2.**

The remainder of Mr. Kujawski's arguments are ultimately unconvincing, because they are tied to his claim that he stopped drinking in December 2006. Nevertheless, this case must still be remanded because the ALJ's treatment of the cessation of Mr. Kujawski's drinking is perplexing and does not allow for meaningful review. *See Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

The ALJ found that Mr. Kujawski stopped using alcohol in March 2007, while Mr. Kujawski claims *he stopped in December 2006.* Neither date is supported by the record. First of all, Mr.

12

Kujawski misquotes his own testimony. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered p. 14). He didn't testify that he stopped drinking in December 2006; he said he last used alcohol three months before his hearing, or December 2009. (R. 38). Moreover, as of March 2007, three months after he claims he quit drinking, Mr. Kujawski was drinking a pint of whiskey every day. (R. 406). That is the date the ALJ gives as the date Mr. Kujawski's alcohol abuse ceased, but that hardly seems likely. And the record shows he did not stop at that time.

In December 2007, Mr. Kujawski reported that he was still drinking "occasionally." (R. 450). It goes on from there. In July 2009, he claimed that his last drink was in February 2009. (R. 489). Discharge orders in February 2010 include the admonition, "PLEASE NO ALCOHOL." (R. 471). So, there is nothing in the record that should lead the ALJ – or this court – to believe Mr. Kujawski stopped drinking in March 2007 – the ALJ's date – let alone December 2006 – the date Mr. Kujawski claims in his brief.

The ALJ confuses matters further by repeatedly prefacing her findings with the phrase, "*if* Mr. Kujawski ceased the substance abuse" while at the same time finding that he *did* cease in March 2007. Either he did or he didn't, the ALJ cannot have it both ways. Indeed, the reviewing physician whose opinion the ALJ accorded great weight – Dr. Kravitz – gave no indication in 2009 that Mr. Kujawski's drinking had ceased. He termed his alcoholism "current", called it his "primary impairment", and did not so much as allude to a cessation date. (R. 433).

It would seem that what the ALJ was trying to say was that Mr. Kujawski is able to work *since* he stopped drinking, rather than he would be able to work *if* he stopped drinking. But it is difficult to trace the path of her reasoning. If one accepts that he ceased drinking in March 2007, the evidence tends to undermine the ALJ's finding that he would be able to work if he didn't drink. To

13

be sure, there were various entries about Mr. Kujawski being oriented, dressed appropriately, and cooperative (R. 18, 19, 20), but that does not exactly make a case for an ability to hold down a full-time job. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)(Posner, J.)(attention to hygiene and a few chores "is just to say that the plaintiff is not a raving maniac who needs to be locked up."). And what about all the other entries?

For example, Mr. Kujawski was experiencing multiple symptoms, including mood swings, racing thoughts, loss of concentration and interest in February 2009. (R. 508). Things were worse in April 2009. He reported mood swings, irritability, anger, anhedonia, and anxiety attacks. He was afraid to go out and wasn't getting out of bed. He reported a suicide attempt in November 2007, and a psychiatric hospitalization in December 2008. Alcohol abuse and a history of alcohol abuse were noted. (R. 503). He was having hallucinations and delusions in July 2009. He reported that he would wind up places without knowing how he got there. (R. 489). He was anxious and scared all the time. (R. 488). In August, he described his life as consisting of taking pills, and staying at home except for doctors' appointments. (R. 484). In June 2010, Mr. Kujawski complained of constant anxiety and worsening depression. (R. 513). He couldn't sleep, concentrate, or focus. (R. 513).

Having found that Mr. Kujawski had stopped drinking, the ALJ could not ignore these types of reports in order to favor the few positive notes and find Mr. Kujawski was not disabled once he stopped drinking. *See Bauer*, 532 F.3d at 609 ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days . . . ."). Of course, the story might be different had the ALJ found, as the record would suggest, that Mr. Kujawski continued to drink after March 2007. And nothing in this decision should be taken to insinuate that the ALJ definitely reached the wrong ultimate conclusion.

But, given the decision that is before the court for review, this case must be remanded because the ALJ failed to build an adequate logical bridge from the evidence to her conclusion. *See Sarchet*, 78 F.3d at 307 ("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

**3.**

A couple of more points are worth noting, however. In his brief, Mr. Kujawski takes pains to liken his situation to that of the plaintiff in *Kangail*, but the argument is unconvincing. In *Kangail*, the record showed that the plaintiff had ceased drug abuse for a three-year period and was still unable to work. 454 F.3d at 630. Here, there is no convincing evidence that Mr. Kujawski has ever stopped abusing alcohol, other than, perhaps, for brief periods here and there. (R. 406). Indeed, if he was drinking a pint of whiskey a day for years, it is not surprising that he was regularly fired from jobs for being "sleepy."

The evidence Mr. Kujawski points to is a block citation to one hundred pages of the medical record. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered pp. 14, citing R. 427-527). If there is evidence in those pages to prove Mr. Kujawski stopped drinking, it is incumbent upon him to cite it specifically. *See, e.g., Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 818 (7th Cir. 2004). Judges are not pigs, nosing about for truffles in briefs. *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991); Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). As it is, just leafing through those hundred pages in a cursory manner uncovers at least a few references to Mr. Kujawski continuing to drink.

15

Mr. Kujawski next complains that the ALJ did not properly consider reports from physicians and psychiatrists who treated him, and faults the ALJ for relying on the reports of the state agency doctors who reviewed the record. Again, however, his position is tied to his claim that he stopped drinking in December 2006. He complains that the state agency reviewing physicians' opinions are not worthy of credence because they ignored evidence that he stopped drinking. But the evidence Mr. Kujawski points to, again, are those one hundred pages of medical records that include references to Mr. Kujawski continuing to drink. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered pages18). Similarly, Mr. Kujawski contends it was wrong of the ALJ to dismiss the opinions of Dr. Stec and the consultative examiner, Dr. Margulis, because they completely ignored his abuse of alcohol. But, again, he grounds this criticism in his unsupported claim that he ceased drinking in December 2006. (*Memorandum in Support of Rule 56(b) Motion*, at unnumbered pages18-19). Moreover, the ALJ did not reject Dr. Margulis's opinion because he did not mention alcohol abuse. (R. 19-20). In fact, as the ALJ noted, Dr. Margulis reported that Mr. Kujawski was drinking a pint of whisky a day (R. 18), and this was some three months after Mr. Kujawski claims he stopped drinking.

## CONCLUSION

The plaintiff's motion for summary judgment or remand [#47] is GRANTED, and the Commissioner's motion for summary judgment [#58] is DENIED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 6/17/14